# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CR. NO. 01-30044-01** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **ANTON L. ROBINSON** | * | **MAGISTRATE JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is an Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.  (Doc. #315).  For reasons stated below, it is recommended that the motion be **DENIED.**

## BACKGROUND

On December 19, 2001, a federal grand jury returned a nine-count indictment against Anton Robinson ("Robinson") and seven other co-defendants.  (Doc. #1).  The indictment named Robinson in only Count One, charging him and other co-defendants with conspiracy to possess with intent to distribute 50 grams or more of a mixture or substance containing cocaine base, also known as crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  *Id.*

 Robinson was subsequently convicted of Count One after a jury trial (doc. #160), and sentenced to 324 months (27 years) of imprisonment.  (Doc. # 186).  The Fifth Circuit affirmed Robinson's conviction and sentence.  *United States v. Robinson*, 72 Fed. Appx. 84 (5th Cir. 2003).

On October 19, 2004, Robinson filed a motion to vacate sentence under 28 U.S.C. § 2255.  (Doc. #223).  In a Report and Recommendation, the undersigned recommended that the

District Court deny Robinson's motion to vacate.  (Doc. #237).  In his objections, Robinson

raised two new arguments.  First, Robinson claimed that he was denied the effective assistance of

counsel because his attorney, Charles D. Jones ("Jones"), failed to inform him of the appropriate

prison terms that he faced.  (Doc. #250, 8).  Robinson asserted that if his attorney had properly

advised him on this matter, he would have pled guilty.  *Id.*  Second, Robinson claimed that he

was denied the effective assistance of counsel because his attorney failed to call a crucial witness

at trial.[1]  Judge James remanded Robinson's case to the undersigned to evaluate these two claims.

*United States v. Robinson*, No. 01-30044-01, 2008 U.S. Dist. LEXIS 89889 (W.D. La. Sept. 16,

2008).

On November 24, 2008, the undersigned ordered Robinson to "provide all relevant

information" supporting these two claims (Doc. #313).  On January 22, 2009, Robinson filed his

amended motion.  An evidentiary hearing was held on July 9, 2009.  Briefing is now complete,

and the matter is ripe for decision.

## LAW AND ANALYSIS

The Law of § 2255 Actions

Issues that a defendant can present in a motion filed under 28 U.S.C. § 2255 are limited.

There are, essentially, four grounds upon which a federal prisoner may move to vacate, set aside,

or correct his sentence:  (1) the sentence was imposed in violation of the Constitution or laws of

the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence

---

[1] In his objections, Robinson's second argument was actually that his trial attorney
labored under a conflict of interest which adversely affected his performance at trial.  (Doc. #250,
9).  However, in his pre-hearing brief, Robinson modified this argument to allege that his trial
attorney was ineffective because he failed to call a crucial witness.  (Doc. #334, 1).

exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack."  28 U.S.C. § 2255; *United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992).  The scope of relief under § 2255 is consistent with that of the writ of habeas corpus.  *Cates*, 952 F.2d at 151; *see also United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

Only cognizable under 28 U.S.C. § 2255 are jurisdictional and constitutional issues and in rare circumstances non-constitutional and non-jurisdictional errors, not raised on appeal, which could result in a "complete miscarriage of justice."  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995); *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

In *United States v. Vaughn*, the United States Court of Appeals for the Fifth Circuit stated:

> [r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that would not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.  *U.S. v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).  Non-constitutional claims that could have been raised on direct appeal but were not may not be asserted in a collateral proceeding.

*United States v. Vaughn*, 955 F.2d 367 (5th Cir. 1992).

Collateral review is fundamentally different from and may not replace a direct appeal. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*).  Thus, even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally.  A defendant may not raise an "issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the

error." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (*citing Shaid*, 937 F.2d at 232); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995).  Of course, issues raised and disposed of on direct appeal are not subject to further review under section 2255.  *See Segler*, 37 F.3d at 1134.

Even if a defendant cannot establish "cause" and "prejudice," he may still be entitled to relief under § 2255 if there is a constitutional error which would result in a complete miscarriage of justice.  *Murray v. Carrier*, 477 U.S. 478, 495-6, 106 S.Ct. 2639, 2649 (1986); *Bousley v. United States*, 523 U.S. 614, 620-2, 118 S.Ct. 1604, 1610-1611 (1998); *United States v. Ward*, 55 F.3d 412, 414 (5th Cir. 1995); *Shaid*, 937 F.2d at 232; *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Hicks*, 945 F.2d 107, 108 (5th Cir. 1991).  Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime of which he is innocent.  *Shaid*, 937 F.2d at 232.

Ineffective Assistance of Counsel

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2255. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996); *United States v. Gipson*, 985 F. 2d 212 (5th Cir. 1993); *United States v. Navejar*, 963 F. 2d 732, 735 (5th Cir. 1992).  Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right.  *Strickland v. Washington*, 466 U.S. 668, 686-7, 104 S.Ct. 2052, 2063-64 (1984).  To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him.  *Id.*

4

If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland* at 689-690, 2065-66. The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland* at 690, 2066; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F. 2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1993); *see also, Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

A. <u>Counsel's Failure to Advise Robinson of his Potential Term of Imprisonment</u>

Robinson first contends that he was denied the effective assistance of counsel because Jones did not adequately inform him about his sentencing exposure.  Robinson specifically asserts that he would have pled guilty if Jones had told him that a guilty plea rendered him eligible for a three level reduction under the Sentencing Guidelines, with a corresponding reduction in his imprisonment range to 235 - 293 months.  Robinson, however, fails to prove this claim by a preponderance of the evidence because his argument ultimately rests on nothing besides his own testimony, which was directly contradicted by Jones' testimony.  *See Alliance to End Repression v. City of Chicago*, No. 74 C 3268, 75 C 3295, 2000 U.S. Dist. LEXIS 18858, at *35 (N.D. Ill. Dec. 21, 2000) ("But a swearing contest between apparently credible witnesses on both sides presents a fatal problem when plaintiffs must carry a clear and convincing burden."); *Flaks v. Koegel*, 72 Civ. 1901, 1978 U.S. Dist. LEXIS 18592, at *5 (S.D.N.Y. Apr. 4, 1978) ("Such a classic swearing contest is resolved by resorting to the rules of burden of proof, and according to those rules, the defendants must prevail.").  *See generally Hayes v. Maggio*, 699 F.2d 198, 201-202 (5th Cir. 1983) ("A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence.").

"In determining whether or not to plead guilty, the defendant should be made aware of the relevant circumstances and likely consequences so that he can make an intelligent choice." *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995).  Failing to inform the defendant of his appropriate exposure under the Sentencing Guidelines falls below the objective standard required by the first prong of *Strickland*.  *See United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005).

To demonstrate that Jones failed to inform him of his appropriate sentencing exposure, Robinson primarily relies on his own testimony at the hearing.  Robinson testified that Jones neither explained to him how the Sentencing Guidelines worked (Tr. 50) nor provided him with a chart of the Sentencing Guidelines.  (Tr. 52-53).  Robinson also testified that Jones advised him that he would not receive more than 20 years (240 months) of imprisonment, whether he went to trial or pled guilty.  (Tr. 52).

Jones, however, directly contradicted Robinson's testimony.  Jones testified that he explained to Robinson how the Sentencing Guidelines applied to the facts of his case.  (Tr. 16-17, 31-32).  Jones also repeatedly testified that he advised Robinson to plead guilty because of the corresponding sentence reduction that he would receive under the Sentencing Guidelines.[2]  Indeed, defense counsel acknowleged that Jones repeatedly testified to this point.[3]

Nevertheless, Robinson claims that Jones admitted at the hearing that he told Robinson that he was likely to receive the same sentence whether he pled guilty or went to trial.  (Robinson Post Hr'g Br., 5-6 [doc. #340]).  However, the primary example that Robinson uses to support this

---

[2] For example, Jones stated, "I indicated to [Robinson] that if he were to go to trial, that he would not get credit for acceptance of responsibility.  I explained to him that if he were inclined to plead or if he wanted to plead or cooperate with the government, that they would - - - that he could possibly earn a 5K1.1 letter for substantial assistance."  (Tr. 6).
   At another point in the hearing, Jones stated, "I told [Robinson] it was in his best interest to plead so he could get credit for acceptance of responsibility."  (Tr. 20).

[3] At the hearing, the following exchange occurred between Robinson's counsel and Jones:

Q. I get the impression from your testimony, Senator Jones, that you believe that you urged, on numerous occasions, Mr. Robinson to plead guilty, and that he simply disregarded your advice.  Is that a fair characteristic of what you're saying?
A. Yes, ma'am.  (Tr. 25).

7

proposition is taken completely out of context.[4]  Furthermore, Robinson's reliance on a second example to support this proposition - Jones' testimony that he advised Robinson that he likely faced over 20 years of imprisonment whether he pled guilty or was convicted at trial (Tr. 14) - is misplaced in that the sentencing range that Robinson would have faced had he pled guilty was 235 - 293 months (19 years, 7 months - 24 years, 5 months).  Thus, assuming that Jones did tell Robinson he was likely to receive a sentence of more than 20 years imprisonment whether he pled guilty or was convicted at trial, it was an accurate statement given the sentencing ranges.

    Robinson raises three additional arguments, none of which are convincing.  First, Robinson points to the absence of any notes that mention Robinson's sentencing exposure from Jones' 500 page case file as evidence that Jones did not have any discussions with Robinson on this topic.  (Robinson Post Hr'g Br., 7).  However, while the making and keeping of notes on the

---

    [4] Robinson points to Jones' statement that Robinson's sentence would be "substantial, whether he went to trial or not," as evidence that indicates that Jones advised Robinson that he would face the same sentence whether he was convicted at trial or pled guilty.  (Robinson Post Hr'g Br., 6).  However, when viewed in the context of the larger exchange between Robinson's counsel and Jones, the undersigned disagrees with this characterization of his testimony:

    Q. So, Senator, I'm not clear when you said that you knew the difference between going to trial and [Robinson] pleading would not be very much.  Was that something you told Mr. Robinson?
    A. No, I didn't tell him.  I didn't mean it would not be very much.  What I meant was that, based upon the amount of drugs that would be imputed to him and the criminal history that he had, that – that it would be substantial, whether he went to trial or not.  That was what I meant by that.  (Tr. 12).

    Jones denied having told Robinson that he faced the **same** sentence whether he went to trial or pled guilty, instead testifying that he informed Robinson that he faced a substantial sentence either way, information which was certainly accurate given the guidelines range for Robinson even if he had pled guilty.

issue would have been a better practice, and would have definitively shown that Jones did have

such discussions with Robinson, the absence of any such notes from Jones' case file does not

prove that Jones failed to have these discussions with Robinson.

Second, Robinson argues that even if Jones actually advised Robinson to plead guilty,

Jones nevertheless failed the first prong of *Strickland* because he did not provide Robinson with

accurate and specific information about his exposure under the Sentencing Guidelines.  (Robinson

Post Hr'g Br., 8).  However, Robinson does not provide the court with any evidence to support

this argument outside of his own self-serving testimony, which was contradicted not only by

Jones' own, albeit also self-serving, testimony that he did discuss the sentence reduction that

Robinson would be eligible for if he pled guilty[5] but also by Jones' accurate grasp of the

Sentencing Guidelines which he demonstrated at the hearing on this matter.[6]

---

[5] Jones testified, "I can't honestly remember whether I told [Robinson] [that the sentence reduction he would receive by pleading guilty] would be five years or 60 months or 40 months. But I told him it was in his best interest to plead so he could get credit for acceptance of responsibility."  (Tr. 20).  Although not specifically raised by Robinson, the undersigned finds that *Strickland* did not require Jones to provide Robinson with the exact number of months by which a guilty plea would reduce his sentence.  The Sentencing Guidelines deal in ranges and not specific lengths of imprisonment, and the final determination of the applicable range is not made until the completion of the pre-sentence report.  Thus, in advising Jones before the completion of the pre-sentence report, Jones could not have been required to provide Robinson with anything more than an approximation of the sentence reduction that a guilty plea would merit.

[6] At the hearing, the following exchange occurred between Robinson's counsel and Jones:

Q. Under the Sentencing Guideline, then, what was the exposure that Mr. Jones had after -

A. Mr. Robinson.
Q. I'm sorry. - Mr. Robinson had after the adjustments were made to the presentence report?
A. It was 324 to 405 months, criminal history category offense level 40.
Q. And by way of example, if Mr. Robinson had, in fact pled and received the three

9

Third, Robinson points to Jones' testimony that Robinson did "not quite get" the advice that Jones tried to provide him as proof that Jones did not clearly convey Robinson's exposure under the Sentencing Guidelines to him.  (Robinson Post Hr'g Br., 9).  However, this argument takes Jones' testimony out of context.  Jones subsequently clarified that despite his best efforts to explain the strength of the government's case to Robinson and to convince him to plead guilty, Robinson did "not quite get" the advantages to pleading guilty because he was adamant about going to trial.[7]

Robinson's argument that Jones did not adequately inform him about his exposure under the Sentencing Guidelines thus turns primarily on a swearing contest between Robinson and Jones.  The only other evidence before this court on the issue is a letter that Robinson wrote to Judge James before trial in which Robinson proclaimed his innocence and attacked the sufficiency

---

points for acceptance of responsibility, what would his range have been?
Q. It would have been 37.
Q. And under the 37, what was the possible sentence that he was facing?
A. 235 months to 293 months.

[7] At the hearing, the following exchange occurred between Robinson's counsel and Jones:

Q. And, Senator, just now when you said, "You're not getting what I'm saying," were you referring to Mr. Robinson?
A. I was not referring - I certainly - I was not referring to you.  I was saying that the - that I was trying to impress upon him that - I saw him as a decent young fellow who got caught up in this situation, and I was trying to save his life.
The reality is that the government had a substantial amount of evidence that I wanted, to the best I could, shield him from the maximum possible exposure.  And that was my motivation.  That was my thought pattern.
Q. And based on your conversations with Mr. Robinson, you just didn't think this was clear to him, is that correct?
A. I didn't - Well, I didn't think that - He wanted a trial.  And at some point, it did not matter what I said.  This was going to be a trial.  And at that point, my strategy had to be, 'Lets get ready for trial.'  And that's what we - that's what we did.  (Tr. 46).

of the evidence to be offered by the government.  (Doc. #126, 2) That letter supports Jones'
testimony that Robinson was insistent on going to trial.  Since the undersigned finds no reason to
believe that Robinson was more credible than Jones, and the only documentary evidence actually
supports Jones' testimony that Robinson insisted on going to trial, Robinson has failed to
demonstrate that Jones' conduct fell below the objective standard required by *Strickland*'s first
prong.

      Since the weight of the evidence, and in particular Robinson's letter to Judge James, also
suggests that Robinson would have proceeded to trial regardless of whether Jones adequately
informed him of his sentencing exposure, the undersigned also finds that Robinson has failed to
make the necessary showing of prejudice required by *Strickland*'s second prong.

      B. <u>Counsel's Failure to Call a Crucial Witness</u>

      Robinson next contends that he was denied the effective assistance of counsel because
Jones did not locate and call at trial a crucial witness.  Robinson specifically asserts that a police
officer saw Carlisea Ross ("Ross"), one of Robinson's co-defendants, in possession of the crack
cocaine that was attributed to Robinson, and that Jones was therefore ineffective in failing to
locate and call this officer at trial, particularly when Ross pled guilty to possession of the crack
cocaine in state court and another police officer, Detective Mark Johnson ("Detective Johnson")
testified at trial, along with five of Robinson's co-defendants, that they saw Robinson in
possession of the crack cocaine.

      "Complaints of uncalled witnesses are not favored in federal habeas corpus review
because allegations of what a witness would have testified are largely speculative."  *Lockhart v.
Texas Department of Commerce*, 782 F.2d 1275, 1282 (5th Cir. 1986).  "Where the only evidence

11

of a missing witness' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Id.*  Moreover, as to the first prong of *Strickland*, the petitioner must overcome a strong presumption that his trial attorney's decision not to call a witness was a strategic one.  *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984).  Finally, to demonstrate prejudice under *Strickland*'s second prong, the petitioner "must show not only that the testimony would have been favorable, but also that the witness would have testified at trial."  *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

The record indicates that Robinson cannot overcome the strong presumption that Jones' decision not to call the police officer was a matter of trial strategy.  Jones testified that he did not discover any evidence that indicated that the police officer would actually testify that he saw Ross, and not Robinson, in possession of the crack cocaine.  (Tr. 29-30).  Accordingly, Jones attempted to persuade the jury that the crack cocaine should be attributed to Ross by introducing Ross' guilty plea and through cross-examination of Detective Johnson and the five co-defendants.  While Jones could have, as an alternative, attempted to attribute the drugs to Ross by locating and calling the police officer, the undersigned finds Jones' approach to this matter to be informed and rational, and therefore within the "wide range of professionally competent assistance."  *See Strickland* at 690, 2066.

## CONCLUSION

For the reasons stated above, it is recommended that defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Thus done and signed, this 16th day of October, 2009, in Monroe, Louisiana.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE